**Application of PETERSEN.**
**Patent Appeal No. 6129.**

United States Court of Customs and Patent Appeals.
July 1, 1955.

Joshua R. H. Potts, Chicago, Ill. (Anthony J. Turchetti, Philadelphia, Pa., of counsel), for appellant.

E. L. Reynolds, Washington, D. C. (H. S. Miller, Washington, D. C., of counsel), for the Commissioner of Patents.

Before O'CONNELL, Acting Chief Judge, and JOHNSON, WORLEY, COLE, and JACKSON (retired), Judges.

COLE, Judge.

Claims 15, 16, and 18 of appellant's application for a patent are directed to a method of producing prestressed concrete structural units such as, for example, deck members for use in the construction of small bridges. The art is not new, it being well recognized that the prestressing of concrete structural units, creating stresses within the concrete itself, improves the structural characteristics of such units. By way of illustration, it is a known fact that a bridge deck member which has been subjected to prestressing during its fabrication is able to withstand a greater load than a comparable deck member which has not been prestressed.

The above numbered method claims of appellant's application allegedly define an inventive improvement over existing prestressing processes. The Primary Examiner of the United States Patent Office considered this contention, but rejected the claims as lacking in invention over a combination of prior art references. The Board of Appeals reviewed and affirmed the examiner's action, and appellant here seeks a reversal of the board's decision.

Claim 15 is representative of those on appeal. Its substance, and a sufficient explanation thereof, is contained in the following from appellant's brief on appeal:

"Prestressing has heretofore been accomplished by the use of stressing elements, such as steel rods or wires, which pass through the concrete structural unit and which are placed under tension with the ends thereof being anchored to the opposite faces of the unit externally thereof. It is evident that if the end anchorage of the wires or rods is at all impaired, the tension therein will be relieved and the beneficial effect of prestressing lost.

"The present appellant has accordingly conceived of an improved method for the manufacture of prestressed concrete structural units which overcomes any of the objections and disadvantages of present methods and which produces a greatly improved structural unit of this type. Specifically, his method consists of: (a) applying tensioning forces to the opposite ends of a multistranded helically twisted wire having helical groves therein, at the same time causing a reduction in the cross-sectional area thereof; (b) pouring concrete about said wire to cause the wire to become completely embedded in the concrete with the concrete entering said helical groves; (c)

vibrating and vacuum drying the concrete to cause it to set and confine the wire with its reduced cross-sectional area; and (d) then relieving the tensioning forces from the ends of the wire.

"In this method, the multistranded helically twisted wires are susceptible to a greater reduction in cross-sectional area than ordinary reinforcing rods or wires, and provide surface irregularities in the nature of interstices, which features jointly contribute to achieving a highly efficient bond between the wires and the concrete, the concrete becoming embedded in these interstices and locked therein by the reduced wires attempting to revert to their original diametric proportions on release of the tension thereon. The step of vibration has been employed for insuring that the concrete will find its way into the most minute crevice in the multistranded reinforcing wire so as to achieve the desired bond therebetween, while the step of vacuum drying has been employed from the practical production standpoint of hastening the drying and setting of the concrete about the wires."

Appellant concedes that each of the foregoing steps of his method, taken individually, is old in the art. He relies for patentability on the combination of these old steps to contribute to the common end of producing a new, improved, and allegedly inventive prestressed concrete structural unit.

 Since it may be admitted that the steps comprising appellant's method constitute a true combination, and it being well settled that a combination of old steps may be patentable if it produces, as a product of the combination, a new and useful result, the question for determination here amounts broadly to this: Is invention involved in combining these old steps in the manner to obtain the result claimed by appellant?

The issue thus presented requires that we first consider the prior art references of record which are as follows: Crisenberry 1,186,554 June 13, 1916; Bennett 1,334,881 Mar. 23, 1920; Ruegg 2,437,003 Mar. 2, 1948; Henderson 2,495,100 Jan. 17, 1950.

The patents to Crisenberry and Bennett each show the use of multi-stranded helically twisted wire under tension to reinforce a concrete block.

The patent to Ruegg relates to a machine for molding concrete units and teaches vibrating the mold (after filling with concrete and prestressing the reinforcing wires) and withdrawing the water and air in the concrete, which are freed by vibration, by suction.

The patent to Henderson discloses a method of using an apparatus for making precast concrete units. Means are shown for prestressing a reinforcing wire adapted to be embedded in a molded concrete unit. A frame adapted to be disposed on or around the mold is provided with pulleys spaced along the sides and ends thereof. A reinforcing wire is trained over the pulleys and is looped back and forth crosswise and longitudinally of the frame. The ends of the wire are secured to a tensioning means. By tightening the tensioning means the reinforcing wire may be stressed to the desired value. The concrete is then cast in the mold. The patentee specifically states that the mold may be vibrated and the excess moisture removed, and further that the wire placed under tension may be vibrated during the casting operation to form a better bond between the concrete and the wire.

The appealed claims were rejected on Henderson in view of Ruegg and Bennett or Crisenberry. The following from the opinion of the Board of Appeals concisely spells out its position:

"The Examiner states that the Henderson patent shows that an intimate bond between the concrete and the reinforcing wire is necessary and to accomplish this end Henderson vibrates the mold and removes the excess water. The Examiner further states that Ruegg vibrates and vacuum dries concrete with reinforcing wires therein. It is the Examiner's

position that since either Crisenberry or Bennett shows that it is old to use multistranded wires to reinforce concrete, it would not involve invention to use such multistranded wires in the method disclosed in Henderson and Ruegg.

"Appellant states * * * that it is true that appellant has combined features which individually are old in the art. He further states that the broad idea of prestressing a tension element in concrete is shown to be old in Henderson and the steps of vibration and vacuum drying are notoriously old in the art of casting concrete as evidenced by the patent to Ruegg. He also states that both Bennett and Crisenberry disclose the use of multistranded helically twisted wires as a prestressed element in concrete. Appellant contends that the combination of elements as set forth in the appealed claims is founded on an inventive concept which is not so much as remotely suggested by the prior art. Appellant further contends that Henderson recognized the need for a firm bond between the wires and the concrete but did not show appellant's method for achieving this bond.

"We have carefully considered appellant's contentions but we find no error in the conclusion reached by the Examiner that the claims are unpatentable over the references. Appellant has crystallized the issue presented by the claims here on appeal by admitting that he has combined features which are individually old in the art. It is clear that none of the individual steps relied on is novel or patentable per se. The steps are individually old as shown by the references. Since the steps recited in the claims on appeal are old in the art, it is our view that the combination of old steps accomplishing no more than an aggregate of old results does not constitute invention and hence the claims are unpatentable over the references. * * * "

Appellant, in his brief on appeal, cites a number of cases in which a new combination of old steps was held to amount to invention. He contends that his claimed combination of old steps produces a new, useful, and improved prestressed unit having structural characteristics never before attained by the prior art. He draws attention to affidavits of record filed on his behalf indicating that the claimed method has met with considerable commercial success. He finally urges that the references do not suggest his combination, and that consequently it is patentable thereover.

 It is clear that the reference patents each relate directly to the prestressing art. Each patent reflects basic teachings in that art. While no single reference discloses all the admittedly old steps of the claimed method, it is proper to combine references, if warranted, to show that the bringing together of these old steps was reasonably suggested by the prior art, and would have readily occurred to the worker skilled in such art. We think the affirmative of that proposition is applicable here, and that the Board of Appeals was entirely correct in its application of the references to meet the subject matter of the appealed claims. Where it appears, as here, that the new combination of old steps, in its unitary result, is nothing more than the sum of several old results, and that such unitary result would be expected by the skilled worker in the art, the combination is not patentable. In other words, to select the best steps of the prior art processes, and combine them into a single method, is not inventive where the combination is such as would be obvious to the skilled worker in the art, and the result achieved such as would be expected therefrom. While appellant, by his new combination of old steps, may realize improvement over the existing art, and commercial success may be established, these factors do not oper-

ate of themselves to sustain a claim to patentability. Sometimes, of course, these factors are strong evidence of invention, depending on the extent of improvement or commercial success, and in a border-line case are frequently persuasive of the issue. We entertain no doubts here concerning appellant's method. Clearly, it does not involve invention.

Since the appealed claims stand or fall together, and claim 15, hereinbefore discussed, is representative, the decision appealed from is affirmed.

Affirmed.

JACKSON, J., retired, recalled to participate herein in place of GARRETT, C. J.